**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL JOHN TEACHOUT,**

                                        **Plaintiff,**

         **vs.**                                        **5:14-cv-00364
                                                        (MAD)**

**CAROLYN W. COLVIN,**
*Acting Commissioner of Social Security,*

                                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**OLINSKY LAW GROUP**                   **HOWARD D. OLINSKY, ESQ.**
300 South State Street
Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **HEETANO SHAMSOONDAR, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this action on April 2, 2014, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking review of a decision of the Commissioner of Social Security

("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

### II. BACKGROUND

Plaintiff's date of birth is March 16, 1963, making Plaintiff forty-seven years old on January 25, 2011, the date alleged his disability began. *See* Dkt. No. 9, Administrative Transcript ("T."), at 165-76. Plaintiff's highest level of formal education was eleventh grade, and, as a student, he received special education services. *See id*. at 13, 19-20, 343. Psychological testing performed in 1997 indicated that Plaintiff suffered from learning disabilities, and he was diagnosed with a reading, math, and written expression disorder. *See id.* at 248. Plaintiff has not completed any vocational training, and he has spent some time in jail out of state for driving while intoxicated. *See id.* at 14. At the time of the hearing, Plaintiff was receiving public assistance in the form of food stamps, and he had previously collected unemployment benefits during the time of alleged disability. *See id.* Plaintiff has not engaged in any kind of work since 2011. *See id.* at 14, 177-80. Plaintiff's relevant work history includes cleaning restrooms in an office building for a janitorial company from 2004 through February 2011. *See id.* at 15, 178-79. Prior to that time, Plaintiff was also employed by a series of restaurants as a dishwasher with the nightly duty of washing the floors. *See id.* at 216-17.

Plaintiff was brought to the emergency department at Upstate University Hospital on February 11, 2011 with a reported recent history of slurred speech, sluggish and slow responses, a change in gait, and two incidents where he lost control of his legs and fell. *See id.* at 276, 283. Plaintiff was admitted to the hospital under neurology services. *See id.* at 284. The diagnostic radiology of his head demonstrated that Plaintiff had suffered multiple acute infarcts. *See id.* at 284, 441. During a neurology examination, Plaintiff demonstrated mild cogwheel rigidity and mild dysdiadochokinesia in his upper, right extremity. *See id.* Genetic testing ruled out Factor V Leiden gene mutations and prothrombin G20210A gene mutations. *See id.* at 294-95. During the hospital admission, it was reported that Plaintiff had good balance when walking, and he did not

suffer from any further episodes of slurred speech.  *See id.* at 282.  Plaintiff was discharged on February 17, 2011 in stable condition.  *See id.* at 281-82.  He was asked to follow up with his primary care physician and the University Hospital stroke clinic ("stroke clinic").  *See id.* at 282.

Shortly before Plaintiff's hospitalization, Plaintiff was seen by his primary care physician for complaints of slurred speech and gait difficulty, and he was referred to an outpatient movement disorder clinic at Upstate University Hospital for facial twitches.  *See id.* at 452. Plaintiff had one outpatient visit with this clinic post-stroke in May 2011, and he presented with mild dysarthric speech, mild right, upper extremity rigidity or spasticity, mild positional tremor, mild sensory vibration loss in his legs bilaterally, and a very mild difficulty with tandem gait.  *See id.* at 452-53.  Plaintiff was discharged from the movement clinic and asked to follow up with the stroke clinic per the hospital discharge instructions.  *See id.*

Plaintiff was treated at the stroke clinic on three occasions, June 14, 2011, December 6, 2011, and June 26, 2012, presenting with complaints of memory issues, depression symptoms, and loss of balance while standing.  *See id.* at 455-58, 461-62.  On physical examination, Plaintiff was found to have some mild right tongue deviation and left-sided facial weakness of the mouth. *See id.* at 455, 457, 461.  At these visits, Plaintiff's upper and lower extremities had full muscle strength, and he was able to walk with a normal stride and cadence with occasional drag of the right leg.  *See id.* at 456, 458, 462.  He was able to demonstrate intact rapid alternating movements and fine finger movements.  *See id.*  Plaintiff was ultimately discharged from the stroke clinic because he was stable and had not develop any new medical issues.  *See id.* at 462.

On March 23, 2011, Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income.  *See id.* at 51, 165-76.  These applications were initially denied in a notice dated July 14, 2011.  *See id.* at 74-75.  Plaintiff

requested a hearing by an administrative law judge in an application dated July 26, 2011, and a video hearing was conducted on September 4, 2012 by Administrate Law Judge Yvette N. Diamond ("ALJ"). *See id.* at 7-48, 82. The ALJ issued an unfavorable decision to Plaintiff on October 18, 2012. *See id.* at 58-73.

The ALJ determined the following: (1) Plaintiff met the insurance status requirements of the Social Security Act; (2) Plaintiff had not engaged in substantial gainful activity since January 25, 2011, the alleged onset of disability; (3) Plaintiff's cerebrovascular disease and mild mental retardation were severe impairments; (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment of 20 C.F.R. Part 404, Subpt. P, App. 1 ("listed impairment"); (5) Plaintiff has the residual functional capacity ("RFC") to perform light work with additional restrictions on posture, speaking, extremity use, and work tasks; (6) Plaintiff's RFC does not allow him to perform any of his past relevant work; and (7) there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform taking into consideration Plaintiff's age, education, work experience, and RFC. *See id.* at 61-73. Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from January 25, 2011 through the date of the decision. *See id.* at 58-73.

Plaintiff filed a timely request for a review of the ALJ's decision. *See id*. at 6. In a notice dated February 7, 2014, the Appeals Council denied that request rendering the ALJ's decision the Commissioner's final decision. *See id.* at 1-5. Plaintiff commenced this action for judicial review of the denial of his claim by the filing of a complaint on April 2, 2014. *See* Dkt. No. 1. Both parties moved for judgment on the pleadings. *See* Dkt. Nos. 13, 14. Having review the administrative transcript, the Court orders that the Commissioner's decision is affirmed.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). The Court must examine the administrative transcript to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and it is not permitted for the courts to substitute their analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) (stating that the Court "would be derelict in our duties if we simply paid lip service to this rule, while shaping [the Court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Analysis**

*1. Disability analysis*

For purposes of both DIB and SSI, a person is disabled when he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating these disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the [Social Security Administration] bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (internal citations omitted)).

*2. Listed Impairment*

Plaintiff contends that the ALJ improperly determined that Plaintiff's impairment did not meet or medically equal the listing under section 11.04 of 20 C.F.R. Part 404, Subpt. P, App. 1 ("§ 11.04"). A listed impairment under § 11.04 exists when a central nervous system vascular accident causes either "[s]ensory or motor aphasia resulting in ineffective speech or communication" *or* "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station" more than three months post-vascular accident. *See* § 11.04(A), (B). "Persistent disorganization of motor function" is defined as "paresis or paralysis, tremor or other involuntary

6

movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction)." 20 C.F.R. Part 404, Subpt. P, App. 1, § 11.00(C); *see also Buccheri v. Astrue*, 586 F. Supp. 2d 54, 60, n.2 (D. Conn. 2008). Plaintiff argues that his impairments qualify under both subsections of §11.04 because he has ineffective speech due to aphasia and has an unsteady gait due to significant and persistent disorganization of motor function. *See* Dkt. No. 13 at 7-10.

Here, the medical evidence cited by Plaintiff, as well as additional medical evidence contained within the administrative transcript, substantially supports the ALJ's findings that Plaintiff's impairments do not meet or equal a listed impairment. Contrary to Plaintiff's contention, the medical evidence does not support that his abnormal speech rises to the level of ineffective. Prior to Plaintiff's stroke, Dr. Boucher performed a psychological evaluation of Plaintiff, which found that although Plaintiff's speech appears to be below average in rate, rhythm, productivity, spontaneity, and affective range, it is clear, coherent, relevant, and goal directed with no signs of dysarthria, dysphasia, or thought disorder. *See* T. at 246. Two months after Plaintiff's stroke hospitalization, he was seen, examined, and evaluated at a hospital outpatient movement disorder clinic. *See id.* at 252. Plaintiff reported that his speech had returned to baseline, noting that he has had speech issues since childhood. *See id.* at 452-53.

Four months after Plaintiff's hospitalization, Plaintiff sought treatment from the stroke clinic. Plaintiff reported some difficulty with word finding when speaking, and the physician, upon examination, found that Plaintiff had some mild right tongue deviation and some left-sided facial weakness of the mouth when he speaks. *See id.* at 455. Subsequently, Plaintiff continued to report some word finding difficulty, but Plaintiff's sister stated that this was an issue prior to Plaintiff's stroke and that his speech had returned to baseline. *See id.* at 457. Over one year after

Plaintiff's stroke hospitalization, Plaintiff reported to the stroke clinic that he did not have any new difficulties with thinking, speaking, or balance. *See id.* at 461. On examination, the physician found that Plaintiff's speech was mildly dysarthric, but Plaintiff's tongue thrust was midline and his soft palate elevated symmetrically with phonation. *See id.* at 461. The Court finds that substantial evidence supports that Plaintiff has some mild abnormal speech but that there is no support in the administrative transcript that Plaintiff's abnormal speech is "ineffective."

Plaintiff further argues that the combination of his speech impairment with his learning disability effectively renders his speech ineffective. *See* Dkt. No. 13 at 10. A medical equivalence to a listed impairment can be found if a plaintiff has a combination of impairments that are at least of equal medical significance to those of a listed impairment. *See* 20 C.F.R. §§ 404.1526(b)(3), 416.926(b)(3). To establish an equivalence, the plaintiff "must show that his or her impairments in combination meet all of the specified criteria." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 268 (N.D.N.Y. 2012). As discussed above, Plaintiff and his sister reported to the medical providers that Plaintiff's speech had returned to baseline from before his stroke. During the consultative examination on May 26, 2011, Plaintiff's speech is noted to be slow but clear, and his speech abnormality is assessed as mild at the last stroke clinic visit. *See* T. at 461. In addition, Dr. Jeanne A. Shapiro performed a consultative psychiatric examination of Plaintiff on June 30, 2011 and found that Plaintiff's "speech intelligibility was fluent" and the "quality of Plaintiff's voice was clear." *See id.* at 345. Dr. Shapiro also found Plaintiff's expressive and receptive language was adequate and his thought processes were coherent, allowing him to relate and interact moderately well with others. *See id.* at 345-46. The Court finds that substantial evidence supports the ALJ's findings that Plaintiff's speech impairment and learning disability, in

combination, did not render his speech ineffective and, accordingly, was not medically equal to a listed impairment.

Plaintiff also argues that his impaired gait qualifies under subsection (B) of § 11.04, as a "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in [a] sustained disturbance of . . . gait and station." *See* Dkt. No. 13 at 9-10. In support of this claim, Plaintiff submits that he lost control over his legs and fell twice just prior to his February 2011 hospitalization. *See id.* In the emergency department on February 11, 2011, the records indicate that Plaintiff had full strength in all of his extremities. *See* T. at 276-77, 424. Plaintiff continued to have full strength (five out of five) in his upper and lower extremities during that hospital admission, *see id.* at 284, 287, 448, and Plaintiff was noted to have good balance when walking at the time of discharge. *See id.* at 281-82.

Approximately one month after the hospitalization, Dr. William Schreiber, Plaintiff's primary care physician, stated that Plaintiff's gait was unsteady but he did not require the use of any assistive devices such as a cane. *See id.* at 279. Dr. Schreiber continued to note at subsequent visits that Plaintiff had an abnormal gait but did not provide any further details. *See id.* at 337, 464, 466. In May 2011, Plaintiff reported to the stroke clinic physician that he continued to have "mild coordination issues" but had not fallen since the stroke. *See id.* at 542-53. Plaintiff continued to have full strength in all four extremities, and he was able to stand from a seated positions and walk on his toes and heels without any difficulty. *See id.* at 453.

At the stroke clinic in June 2011, Plaintiff reported some loss of balance with prolonged standing, but no falls. *See id.* at 455. Plaintiff continued to have full strength in his extremities, and he was able to stand from a seated position without any assistance. *See id.* The physician reported that Plaintiff walked with normal stride and cadence and was able to tandem walk

without difficulty.  *See id.*  At the same clinic in December 2011, Plaintiff complained of some shuffling of gait, but he was found to have full strength and could stand without using his hands for assistance.  *See id.*  When Plaintiff was evaluated by the stroke clinic in June 2012, Plaintiff's gait condition was unchanged.  *See id.* at 461-62.  He had full strength in his extremities and the ability to stand and walk without difficulty.  *See id.*  Plaintiff was referred to, and completed, physical therapy for his balance and gait.  *See id.* at 305-30.  In total, Plaintiff had twenty physical therapy sessions in ten weeks, after which he was discharged from therapy upon completion of the goals.  *See id.* at 329.

A consultative examination was performed by internal medicine specialist, Dr. Tanya Perkins-Mwantuali, on May 26, 2011.  *See id.* at 339-42.  Upon examination of Plaintiff, the physician's findings were similar to Plaintiff's treating medical providers, including that Plaintiff had five out of five strength in his upper and right lower extremities and four out of five strength in his lower left extremity.  *See id.*  Dr. Perkins-Mwanuali did not find any cyanosis, clubbing, edema, or muscle atrophy.  *See id.*  Plaintiff was able to walk on his heals and toes without difficulty and perform a full squat, and he did not use any assistive devices.  *See id.*  Further, Plaintiff was able to rise from a chair without difficulty and did not need any assistance getting on and off the examination table.  *See id.*  Dr. Perkins-Mwantuali concluded that Plaintiff had a mild limitation with walking.  *See id.*  Based upon the substantial medical evidence outlined here, the Court finds that Plaintiff's gait impairment does not meet the listed requirements of § 11.04(B).  At most, the medical evidence supports a mild limitation with walking, which is not a *significant* and persistent disorganization of motor function.  *See Buccheri*, 586 F. Supp. 2d at 60-61.

### 3. Treating Physician Rule

At the fourth step in the analysis, the ALJ determines a plaintiff's RFC, which is what a plaintiff can still do despite his or her limitations. *See* SSR 96-8P, 1996 WL 374184, *2. The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairments(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* The assessment takes into consideration the limiting effects of all of a plaintiff's impairments, severe and non-severe, and the determination sets forth the most a plaintiff can do. *See* 20 C.F.R. § 404.1545(a)(1), (e).

It is Plaintiff's next contention that the RFC is not supported by substantial evidence because the ALJ did not assign controlling weight to Plaintiff's treating primary care physician, Dr. William Schreiber. *See* Dkt. No. 13 at 10-14. Dr. Schreiber provided two letters dated, March 23, 2011 and December 5, 2011. *See* T. at 303, 423. In the first letter, Dr. Schreiber stated that "[Plaintiff] is totally disable at this time" without any further statement on Plaintiff's medical condition. *See id.* at 303. Dr. Schreiber's second letter stated that "[Plaintiff] had a stroke and is unable to be gainfully employed." *See id.* at 423. Dr. Schreiber also stated that "[plaintiff] is unable to sit, or stand for any length of time," and that "[h]e also has an unsteady gait, which makes it difficult for him to walk any distance." *See id.*. The medical records in the administrative transcript indicate that Dr. Schreiber was Plaintiff's long-time primary care provider from August 21, 2006 through at least July 31, 2012. *See id.* at 249-60, 272-75, 279-80, 303-04, 335-38, 354–55, 423, 464-69.

The ALJ found that Dr. Schreiber's opinions, concluding that Plaintiff was "totally disabled" and "unable to be gainfully employed," were determinations reserved for the Commissioner and were not medical opinions entitled to any special weight. *See id.* at 67.

Defendant reiterates that sentiment in her motion papers. *See* Dkt. No. 14 at 10. As an initial matter the Court agrees with the ALJ and Defendant. Opinions that are dispositive of disability are reserved to the Commissioner, and they are not medical opinions entitled to any controlling weight. *See* 20 C.F.R. § 404.1527(d). Dr. Schreiber's conclusions that Plaintiff is disabled and unable to work are administrative findings reserved for the Commissioner and were appropriately not accorded controlling weight by the ALJ.

However, Dr. Schreiber's second letter contains additional opinions that Plaintiff "is unable to sit, or stand for any length of time" and that "[h]e also has an unsteady gait, which makes it difficult for him to walk any distance." T. at 423. These statements are medical opinions about the nature and severity of Plaintiff's impairments and symptoms. *See* 20 C.F.R. § 404.1527(a)(2). These opinions can be entitled to "controlling weight" when the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) ("Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the [plaintiff's] impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence."); *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007) (noting that inconsistent evidence can be in the form of opinions of other medical experts). An ALJ may refuse to consider the treating physician's opinion only if he or she is able to set forth good reason for doing so. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject

such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (1) the frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

Plaintiff argues that the ALJ did not apply the correct legal standard because he did not evaluate the treating physician's relationship with Plaintiff. *See* Dkt. No. 13 at 10-14. "An ALJ does not have to explicitly walk through the [regulatory] factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule . . . and provide[d] good reasons for the weight she [or he] gives to the treating source's opinion." *Wells v. Colvin*, ___ F. Supp. 3d ___, ___, No. 13-CV-6593, 2015 WL 770046, *12 (W.D.N.Y. Feb. 24, 2015) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation and citations omitted). In *Halloran*, the Second Circuit found that controlling weight was appropriately not given to a treating physician's opinions that "were not particularly informative and were not consistent with those of several other medical experts." *See id.* Although the ALJ in that case had not expressly acknowledged the treating physician rule and, in turn, had not expressly addressed the regulatory

factors of 20 C.F.R. § 404.1527(d)(2), the court found that the ALJ applied "the substance of the treating physician rule." *Id.*

Here, the ALJ acknowledges that Dr. Schreiber is Plaintiff's treating primary care physician and addresses why his opinions are not given controlling weight. *See* T. at 67-68. The ALJ found that Dr. Schreiber's opinion that Plaintiff is not able to sit or stand for any length of time or walk any distances to be contradicted by the records as a whole because the medical records demonstrate steady improvement in Plaintiff's gait. *See id.* at 67. Also, the ALJ noted that there is no support in the record that Plaintiff is unable to sit or to stand. *See id.* According to the ALJ, Dr. Schreiber's own treatment records that were created contemporaneously reflect generally benign examination results and do not support the opinion that Plaintiff is unable to sit or stand for any length of time or walk any distances. *See id.* Although the treating physician rule was addressed in an abbreviated manner, the ALJ applied the substance of the rule.

Plaintiff further argues that the ALJ erred when finding that Dr. Schreiber's medical opinions were not supported by his own medical records. *See* Dkt. No. 13 at 12-14. Specifically, Plaintiff claims that Dr. Schreiber's medical records show that his prescribed list of medications was longer in 2012 than in 2006, demonstrating his declining health, and Dr. Schreiber's records also reflect his visit on February 1, 2011 with signs and symptoms of stroke. *See id.* According to Plaintiff, this medical evidence is consistent with and supports Dr. Schreiber's medical opinions. *See id.*

First, it is not in dispute that Plaintiff suffered at least one stroke in the relevant time period and, therefore, the fact that Dr. Schreiber's records reflect that Plaintiff had signs and symptoms of a stroke just prior to being diagnosed does not provide support to the opinion that Plaintiff is unable to sit, stand, or walk at length. Further, an increase in the number of prescribed

medications – not all related to Plaintiff's stroke – also does not demonstrate to the Court that Dr. Schreiber's opinion is supported by his treatment records. In addition to inconsistencies addressed by the ALJ, the Court additionally finds that the medical evidence and Plaintiff's hearing testimony do not support Dr. Schreiber's opinions.

Plaintiff testified that he does not need to walk with an assistive device and that his right leg has a little bit of weakness when he walks. *See id.* at 22. Plaintiff's routine activities include walking for exercise, walking to the pharmacy to fill prescriptions, and walking to the bus stop in order to visit with a friend. *See id.* at 24-26. Dr. Schreiber's medical records indicate that Plaintiff has an abnormal gait, but there is no documented findings that Plaintiff is limited in his ability to sit or stand. *See id.* at 249-60, 272-75, 279-80, 303-04, 335-38, 354–55, 423, 464-69. Further, Plaintiff's ability to walk is described as mildly limited. *See id.* at 342. The Upstate University stroke clinic saw Plaintiff for three visits after his stroke and provided a more detailed description of Plaintiff's impaired gait and medical condition. *See id.* at 452-53, 457-58, 461-62. Plaintiff did not have any difficulty with sitting or standing at these examinations. *See id.* At Plaintiff's last visit with the stroke clinic, the physician noted that Plaintiff does not have difficulty walking and only some difficulty with tandem walking. *See id.* at 455-56.

Dr. Perkins-Mwantuali's consultive opinion is also consistent with these findings, stating that Plaintiff's took tiny steps when walking, but Plaintiff could walk on heels and toes without difficulty, perform a full squat, demonstrated a normal stance, and rise from chair without difficulty. *See id.* at 340. Dr. Perkins-Mwantuali opined that Plaintiff had a mild limitation with walking. *See id.* at 342. The Court finds that Dr. Schreiber's opinions are inconsistent with the records on a whole and that there is substantial evidence to support the ALJ's determination that Dr. Schreiber's opinions were not entitled to controlling weight.

### *4. Plaintiff's Credibility*

Plaintiff contends that the ALJ did not provide a sufficient application of the facts to the credibility analysis in her decision. *See* Dkt. No. 13 at 14-15. The ALJ assesses a plaintiff's subjective symptoms using a two-step process. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, *1. At the first step, the ALJ must determine whether a plaintiff has an underlying impairment that is established by acceptable clinical diagnostic techniques and could reasonably cause a plaintiff's symptoms. *See* SSR 96-7P, 1996 WL 374186, *2. If an impairment is shown, the ALJ "must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which the symptoms limit the [plaintiff's] ability to do basic work activities." *See id.* at *2. "When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole." *Wells*, 2015 WL 770046, at *9; *see also Snell*, 177 F.3d at 135.

The entire case record includes a plaintiff's history, laboratory findings, a plaintiff's statements about symptoms, statements and information provided by treating and non-treating physicians, and statements from other people that describe how the symptoms affect a plaintiff. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, *1. Factors that are relevant to a plaintiff's symptoms include: (1) the plaintiff's daily activities, (2) location, duration, frequency, and intensity of symptoms, (3) precipitating and aggravating factors, (4) medications and their side effects, (5) treatment received, (6) measures used to alleviate symptoms, (7) and other factors concerning functional limitations and restrictions due the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

In the present case, the ALJ found that Plaintiff had an underlying medically determinable impairment that could reasonably be expected to produce Plaintiff's alleged symptoms. *See* T. at 66. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible to the extent that they were inconsistent with the following capabilities and limitations: (1) light work as defined in 20 C.F.R. § 404.1567 (b); (2) occasional pushing or pulling, climbing, stooping, kneeling, crouching, and crawling; (3) never able to climb ladders or have exposure to heights or hazards; (4) no balancing; (5) allowed the option to sit or stand at will without leaving the work station; (6) no more than frequent speaking; (7) limited to performing simple, routine tasks; (8) requires simple instructions with reminders every two hours; (9) no multi-tasking; and (10) frequent fingering and handling with his upper extremities. *See id.* at 39-45.

Although the ALJ's credibility analysis did not explicitly address the factors in 20 C.F.R. § 416.929(c)(3), she set forth Plaintiff's statements made to medical providers, medical evidence, hearing testimony, and physical therapy treatment, which were considered. *See id.* at 65-67. "While it is 'not sufficient for the [ALJ] to make a single, conclusory statement that' the claimant is not credible or simply to recite the relevant factors, remand is not required where 'the evidence of record permits us to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013) (internal citations omitted) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Further, "[the court] would not remand where '[the court is] able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that [the ALJ's] determination was supported by substantial evidence.'" *Mongeur*, 722 F.2d at 1040 (internal citations and quotation marks omitted).

Upon review of the ALJ's decision and the administrative record, the Court finds that the ALJ accepted Plaintiff's testimony about his symptoms of impaired memory and concentration, extremity weakness, and learning disability. *See id.* at 65-68. The ALJ states that "in an effort to afford the claimant the benefit of any reasonable doubt," Plaintiff was limited to light work with restrictions on his posture, speaking, extremity use, and work tasks. *See id.* Specifically, Plaintiff was permitted the option to sit or stand at will and was limited to no balancing. *See id.* Further, to account for Plaintiff's "mild mental retardation" and memory and concentration problems, the ALJ found that Plaintiff was "precluded from multi-tasking and limited to simple, routine tasks, with simple instructions with reminders given every two hours." *See id.* at 66-67.

As it is fully discussed above, the alleged severity of Plaintiff's physical limitations to sit, stand, and walk were not credible because Plaintiff's treating and non-treating physicians' records and his testimony about daily activities indicate that Plaintiff did not have difficulty sitting, standing, or walking as permitted in Plaintiff's RFC. The ALJ's determination of Plaintiff's credibility, as it related to the severity of his mental impairments, was also supported by substantial evidence. Plaintiff's testimony and medical records were inconsistent with Plaintiff's claims that his memory prevented him from working. The ALJ acknowledged that Plaintiff had been diagnosed with "mild mental retardation" and a learning disability. *See id.* at 66-67. The ALJ cited to Plaintiff's testing and consultive examination that found Plaintiff had a limited fund of information and deficient intellectual functioning. *See id.* at 67. The ALJ also cited the opinions of Dr. Jeanne Shapiro, the psychological consultive examiner, and the State agency psychological consultant, which were consistent with the ALJ's findings of Plaintiff's RFC and contrary to the severity claimed by Plaintiff.

Dr. Shapiro stated that Plaintiff's recent and remote memory skills were intact without any apparent long-term or short-term memory deficits. *See id.* at 345. Dr. Shapiro also noted that Plaintiff was able to supply all the requested information, both long-term and short-term, without hesitation. *See id.* At the hearing, Plaintiff testified that his memory is a lot worse after the stroke and that he is not able to concentrate on more than one thing at a time. *See id.* at 19, 37. However, he is able to live independently in an apartment, and he walks to the pharmacy to refill his medications and remembers to take his prescribed medications regularly. *See id.* at 12, 21. According to Plaintiff, he is able to take a shower, dress, and feed himself daily, and, with reminders, he does his own laundry and cleans his apartment. *See id.* at 24-25. Plaintiff is also able to use public transportation, and he is able to cook on the stove.. *See id.* at 25-26, 36. This Court's review of the ALJ's decision together with the administrative record reveal that the ALJ's assessment of credibility was substantially supported by the record.

### 5. *Step Five*

At step five of the social security disability analysis, the ALJ found that – considering Plaintiff's age, education, work experience, and RFC – jobs that Plaintiff can perform exist in significant numbers in the national economy, as well as the New York economy. *See id.* at 68. The ALJ's findings were based upon the vocational expert's testimony that jobs, as an assembler, packer, and sorter/grader, are available for a person of Plaintiff's age, education, work experience, and RFC. *See id.* at 39-45. Initially, Plaintiff argues that because the ALJ's determination on Plaintiff's credibility and the application of the treating physician rule were incorrect, resulting in an improper RFC, any step five analysis is tainted. *See* Dkt. No. 13 at 15. As it is discussed above in this decision, the Court finds that the ALJ properly applied the treating physician rule and properly assessed Plaintiff's credibility. Accordingly, Plaintiff's initial arguments are of no

moment. *See Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 319 (W.D.N.Y. 2013) (citing *Wavercak v. Astrue*, 420 Fed. Appx. 91, 95 (2d Cir. 2011).

Next, Plaintiff contends that he is unable to perform the basic mental demands of unskilled work because he does not have the ability to understand, carry out, and remember simple instructions, and he is not able to respond appropriately to usual work situations. *See* Dkt. No. 13 at 15-17. Essentially, Plaintiff argues that substantial evidence does not support the RFC as it relates to the unskilled work requirements outlined in SSR 85-15, 1985 WL 56857, *4. *See id.* In support of his argument, Plaintiff states that his memory loss is documented within the record and that even the ALJ doubted Plaintiff would be able to remember simple instructions. *See id.* Further, Plaintiff claims that the record "suggests some doubt as to Plaintiff's ability to respond appropriately to usual work situations." *See id.* at 16.

In making the RFC determination on mental functioning, the ALJ acknowledged that Plaintiff had been diagnosed with mild mental retardation and a learning disability, and the ALJ cited to the fact that Plaintiff's testing placed him in a deficient range of intellectual functioning. *See id.* at 66-67. The ALJ accepted Plaintiff's testimony that he suffered from memory and concentration problems and accommodated those limits in the RFC findings. *See id.* The ALJ also discussed the opinions of Dr. Jeanne Shapiro, who found that Plaintiff did not suffer from any long-term or short-term memory deficits, and the State agency psychological consultant, who found Plaintiff was moderately limited in ability to understand and remember detailed instructions. *See id.* At the hearing, Plaintiff testified about living independently and his ability to care for himself, such as refilling and taking his medication, attending to his hygiene, and preparing his own food. *See id.* at 12, 21, 24-25. According to Plaintiff, he does his own laundry

and cleans his apartment with telephone reminders from his sister. *See id.* at 24-25. Plaintiff is also able to use public transportation for social visits. *See id.* at 25-26.

With regard to Plaintiff's claim that the record "suggests some doubt as to Plaintiff's ability to respond appropriately to usual work situations," Plaintiff testified briefly that he gets along with other people but that he recalled one incident where he snapped and argued with his sister. Dkt. No. 13 at 16; *see also* T. at 29. The state agency psychologist checked off that Plaintiff is moderately limited in his ability to accept instructions and respond appropriately to criticisms from supervisors. *See id.* at 348. Dr. Shapiro opined that Plaintiff is "capable of performing simple and perhaps some complex tasks with supervision and [with] independen[ce]" and that Plaintiff appears to be able to relate and interact moderately well with others. *See id.* Upon review of the record, the Court finds that the ALJ carefully considered Plaintiff's testimony and medical evidence when she determined Plaintiff's mental capabilities and impairments in the RFC determination. The medical evidence outlined in the ALJ's decision as well as other evidence within the record substantially supports the ALJ's findings that Plaintiff has the mental capacity to perform unskilled work as described in SSR 85-15.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated:  May 28, 2015
         Albany, New York

Mae A. D'Agostino
U.S. District Judge